2021 PA Super 102

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| CHRISTOPHER MICHAEL CRAWFORD | : | |
| Appellant | : | No. 853 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 20, 2020
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0000254-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| CHRISTOPHER CRAWFORD | : | |
| Appellant | : | No. 854 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 20, 2020
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002126-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| CHRISTOPHER CRAWFORD | : | |
| Appellant | : | No. 855 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 20, 2020
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002127-2019

J-S10033-21

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                          **FILED MAY 18, 2021**

Christopher Michael Crawford (Crawford) appeals the judgment of sentence entered in the Court of Common Pleas of Lackawanna County (trial court) following a bench trial on numerous fraud-related charges in three consolidated cases. Essentially, he was found guilty of lying about his status as a military veteran in order to join and defraud a post of the American Legion. Crawford was sentenced to a prison term of 6 to 12 years, followed by four years of probation. He now argues that the offense of misrepresenting veteran status is unconstitutional, that the evidence as to all of his convictions is legally insufficient, and that his sentence was overly harsh and excessive as to all counts. We affirm in part, reverse in part, and remand for resentencing.

**I.**

The underlying record facts are not in dispute. Crawford enlisted with the United States Army in 2007. Within three months of his enlistment, Crawford had gone AWOL from boot camp and was classified as a deserter without having completed his training.

Crawford surrendered himself to military authorities on November 9, 2007, and was discharged on other than honorable conditions at that time. According to the discharge papers that Crawford signed, the lack of an

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

honorable discharge meant that he could be deprived of "rights and benefits as a veteran under both federal and state law." The testimony of the Director of Veterans Affairs in Lackawanna County (David Eisele) established that these discharge conditions would relegate Crawford to the status of a civilian who would not be entitled to join any American Legion posts. *See* Trial Transcript, 2/25/2020, at p. 23) (a.m. session).

Nevertheless, some time after his discharge, Crawford managed to join an American Legion post in Pittsburgh. In 2018, after moving to Lackawanna County, Crawford set out to join Post 568. He spoke with the Post's Sergeant at Arms and canteen manager, Robert Kerrigan (Kerrigan), about membership.

At trial, Kerrigan recalled that Crawford made several representations about his past military experience during those conversations. *Id*. at pp. 28-34 (p.m. session). He falsely told Kerrigan that he was a veteran of the Iraq War and that he had received a Purple Heart for sustaining a brain injury from an explosive device. Crawford also regularly wore a cap affixed with badges and pins which are only conferred upon military veterans for exploits that

Crawford had never achieved. These unearned decorations included a Combat Infantryman Badge[1] and a 10th Mountain Division pin.[2]

Due to his past membership in the Pittsburgh post, Crawford's background check for Post 568 was abridged and he was made a member. Soon thereafter, he was promoted to its executive committee which, among other things, controlled the Post's finances and proceeds from its canteen. Crawford was elevated to the administrative position of adjutant and finance officer in part because he was very familiar with the Post's regulations and he had promised to help recruit younger members.

Between March and August of 2019, Crawford obtained debit cards linked to the bank account of Post 568. They were used to make purchases and withdrawals totaling over $17,000 for purposes that did not at all relate to the Post. For example, some of the charges on the debit cards included payments for bars, hotels, restaurants, casinos and flights to Florida.

Three members of Post 568 testified that Crawford did not produce receipts for these charges as was required when incurring any expenses on behalf of the Post. Further, these witnesses testified that the subject expenditures were not authorized or approved by the rest of the Post's

_____

[1] The Combat Infantryman Badge is a decoration awarded to infantrymen in the United States Army.

[2] The 10th Mountain Division is an infantry unit of the United States Army.

executive committee. Post 568 had never even used debit cards to conduct its business until Crawford successfully pitched the idea.

At the conclusion of the bench trial, Crawford was sentenced to an aggregate prison term of 6 to 12 years, followed by 4 years of probation.[3] The sentence as to each of the three cases is as follows:

- 19-CR-2126: receiving stolen property (2.5 to 5 years), access device fraud (2.5 years on one count, and 2 years of probation on each of other two counts), theft by unlawful taking (2 years of probation, consecutive to other counts)

- 19-CR-2127: receiving stolen property (2.5 to 5 years, consecutive to 19-CR-2126), access device fraud (2.5 years on one count, and 2 years of probation on each of other two counts), theft by unlawful taking (2 years of probation, consecutive to other counts)

- 20-CR-254: misrepresentation of status as member or veteran of military (6-12 months, consecutive to other sentences), misrepresentation of decoration or medal (6 to 12 months, consecutive to other sentences).

Crawford filed post-sentence motions,[4] all of which were denied. He then timely appealed in compliance with Pa.R.A.P. 1925 and the trial court issued a 1925(a) opinion. In his appellate brief, Crawford asserts six main issues, some of which contain several sub-issues within them:

---

[3] Except for the sentences on the counts of unlawful taking, the probationary terms are all concurrent.

[4] Crawford's post-sentence motions included the claim that his convictions were against the manifest weight of the evidence. He also sought reconsideration of the length of his sentences.

(1) Whether [Crawford] is entitled to acquittal as 18 Pa.C.S. § 6701(b) is unconstitutionally vague and, therefore, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 9, of the Pennsylvania Constitution since the statutory language: (a) does not specify a precise *mens rea* or *actus reus* to provide notice to persons of Common understanding as to the proscribed conduct, (b) as written invites the Commonwealth to engage in arbitrary enforcement . . . on an *ad hoc* and subjective basis, (c) is vague and no person of ordinary understanding would be able to determine the meaning of the status of "veteran" as necessary under this statute[.]

2. Whether [Crawford] is entitled to acquittal as 18 Pa.C.S. §6701(b) unconstitutionally violates the right to freedom of speech as protected by the First Amendment of the United States Constitution and Article 1, Section 7 of the Pennsylvania Constitution since the language of 18 Pa.C.S. § 6701(b), as written, invites the Commonwealth to suppress constitutionally protected speech.

3. Whether the evidence was sufficient to prove beyond a reasonable doubt that [Crawford] was guilty of access device fraud, theft by unlawful taking, receiving stolen property, misrepresentation of member or veteran of military, and misrepresentation of decoration or medal.

4. Whether the verdicts on the charges of access device fraud, theft by unlawful taking, receiving stolen property, misrepresentation of member or veteran of military, and misrepresentation of decoration or medal were against the weight of the evidence.

5. Whether the trial court erred when it failed to order that the sentences for receiving stolen property and for theft by unlawful taking merge.

6. Whether the trial court imposed harsh and excessive aggregate sentences on all charges.

Appellant's Brief, at 5.

**II.**

We address Crawford's first two claims together, as they both turn on the constitutionality of Section 6701(b), which criminalizes the misrepresentation about one's past military service with the intent to profit from the falsehood. Crawford first argues that Section 6701(b)(1) of the statute is vague because it does not clearly define who qualifies as a military "veteran." He then argues that Section 6701(b)(2) of the statute is overbroad because it criminalizes speech protected by the First Amendment. We find no merit in either claim.

**A.**

Before evaluating Crawford's two constitutional challenges, it is necessary for us to review the terms of Section 6701(b), categorize the precise types of claims that Crawford is making, and then identify the standards that must be used to ascertain the statute's validity.

From the plain terms of Section 6701(b), the statute's purpose is to make it illegal to profit by touting a bogus military record. Subsection (b)(1) concerns misrepresentations as to being a veteran and subsection (b)(2) concerns misrepresentations as to being awarded decorations or medals by the armed forces:

**(b) Misrepresentation of military service or honors.**

A person commits a misdemeanor of the third degree if, with intent to obtain money, property or other benefit, the person fraudulently holds himself out to be any of the following:

(1) A member or veteran of any branch of the armed forces of the United States or of any of the several states.

(2) The recipient of any decoration or medal authorized by the Congress of the United States for the armed forces of the United States or any of the service medals or any decoration awarded to members of the armed forces of the United States or of any of the several states.

18 Pa.C.S. § 6701(b).

Like all enacted statutes, Section 6701(b) is afforded a presumption of validity. *Commonwealth v. Mayfield*, 832 A.2d 418, 421 (Pa. 2003); *Commonwealth v. Barud*, 681 A.2d 162, 165 (Pa. 1996). "[W]e presume 'the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.'" *Mayfield*, 832 A.2d at 421 (quoting 1 Pa.C.S. § 1922(3)). A statute will only be struck down if it "palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality." *Mayfield*, 832 A.2d at 421.

To comport with the right to due process, statutes need only be clear enough to make the prohibited conduct reasonably understood. *See Commonwealth v. Magliocco*, 883 A.2d 479, 487 (Pa. 2005); *Commonwealth v. Thur*, 906 A.2d 552, 560 (Pa. Super. 2006).

Under the void-for-vagueness standard, a statute will only be found unconstitutional if it is "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Commonwealth v. Cotto*, 753 A.2d 217, 220 (Pa. 2000) (quotations omitted). A statute will survive a vagueness challenge if it "define[s] the

criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." **Kolender v. Lawson**, 461 U.S. 352, 357 (1983); **Commonwealth v. Bullock**, 913 A.2d 207, 212 (Pa. 2006).

Challenges on vagueness grounds come in two varieties, each of which have a different standard of constitutional validity. A *facial* challenge asserts that the statute in question is vague as to any conduct which the statute arguably encompasses. **See generally Commonwealth v. Habay**, 934 A.2d 732, 738 (Pa. Super. 2007). This type of challenge must involve a First Amendment claim that the freedom of speech has been abridged. **See id**.

Conversely, an *as applied* challenge only concerns the particular conduct of the individual challenging the statute; it does not implicate the First Amendment. For as applied challenges, a court only has to assess whether the statute is vague within the context of the particular circumstances at issue. With that background in mind, we will now address the specifics of Crawford's challenges.

**B.**

Because it does not define who qualifies as a "veteran," Crawford contends that 18 Pa.C.S. § 6701(b)(1) is void for vagueness, thereby depriving him of notice as to the nature of the prohibited conduct. Even though he went AWOL from boot camp without having completed his training,

he was classified as a deserter, and he received less than an honorable discharge depriving him of the "rights and benefits as a veteran under both federal and state law," Crawford argues that he could have reasonably believed that he was a veteran. Since this claim concerns how the statute applies to Crawford's unique circumstances, his constitutional challenge is of the as applied variety.

"When words are not defined in a statute, the Pennsylvania Statutory Construction Law instructs that terms should be construed in accordance with their common or approved usage." *Commonwealth v. Crawford*, 24 A.3d 396, 401 (Pa. Super. 2011) (citing 1 Pa.C.S. § 1903). "Veteran" is defined as "someone who has been honorably discharged from military service*." **Black's Law Dictionary** (11th ed. 2019). "Honorable discharge" is defined as "a formal final judgment passed by the government on a soldier's entire military record, and an authoritative declaration that he or she has left the service in a status of honor." *Id.*

Consistent with the above definitions, the Department of Veterans Affairs defines "veteran" as "a person who served in the active military, naval, or air force, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C.S. § 101(2) (definitions section of United States Code governing veteran benefits); 38 C.F.R. § 3.1(d) (Code of Federal Regulations governing compensation).

A "veteran" refers to someone who has actively and honorably served in the military. This definition would exclude those who have been discharged prior to finishing boot camp, and certainly those who have received something other than an honorable discharge after going AWOL before that initial training has been completed – such persons have not yet undertaken any active military service.

As applied to him in the context of the circumstances of this case, the definition of "veteran" in Section 6701(b)(1) was sufficiently clear enough to convey the prohibited conduct. It is not so vague as to result in arbitrary and discriminatory enforcement. Persons of ordinary intelligence would not have to guess at the statute's meaning. No reasonable person would have thought that a veteran could refer to a trainee who deserted before recording a single day of active service and who received less than an honorable discharge.

There is, in fact, every indication from Crawford's own conduct that he knew his real background fell short of qualifying him as a veteran; otherwise he would not have lied about it. Accordingly, the statute's use of the term comported with due process requirements, and the trial court did not err in finding it constitutionally valid.[5]

---

[5] In addition to the definition of "veteran," the proscribed conduct outlined in Section 6701(b)(1) is sufficiently clear to satisfy constitutional due process requirements.

- 11 -

**C.**

Crawford next argues that Section 6701(b)(2) is overbroad because the First Amendment guarantees the right to claim the associated status of military regalia (such as medals or decorations) even if they have not been legitimately obtained via the military service they signify.[6]

"Applying strict scrutiny, '[t]he [g]overnment may . . . regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.'" ***Shepp v. Shepp***, 906 A.2d 1165, 1173 (Pa. 2006) (quoting ***Sable Communications of Cal., Inc. v. FCC***, 492 U.S. 115, 126 (1989)).

In determining whether a statute is unconstitutional due to overbreadth, a "court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." ***Commonwealth v. Ickes***, 873 A.2d 698, 702 (Pa. 2005) (quoting ***Vill. of Hoffman Estates v. Flipside, Hoffman Estates Inc.***, 455 U.S. 489, 494 (1982)). The "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." ***Broadrick v.***

---

[6] The First Amendment freedom of speech applies to Pennsylvania by operation of the Fourteenth Amendment. Article 1, Section 7 of the Pennsylvania Constitution separately "guarantees not only freedom of speech and the press, but specifically affirms the 'invaluable right' to the 'free communication of thoughts and opinions,' and the right of 'every citizen' to 'speak freely' on 'any subject' so long as that liberty is not abused." ***Pap's A.M. v. City of Erie***, 812 A.2d 591, 603 (Pa. 2002).

*Oklahoma*, 413 U.S. 601, 615 (1973).  If a statute's overbreadth is substantial, "it may not be enforced against anyone until it is narrowed to reach only unprotected activity."  *Mayfield*, 832 A.2d at 425 (quoting *Commonwealth v. Hendrickson*, 724 A.2d 315, 317–18 (1999)).

Here, Crawford's central contention is that Section 6701(b)(2) is invalid for the same reason that the Federal Stolen Valor Act (18 U.S.C. § 704) was struck down as overbroad by the United States Supreme Court in *United States v. Alvarez*, 567 U.S. 709 (2012).  However, the reasoning of the plurality and concurring opinions of *Alvarez* illustrate why the Pennsylvania law does not run afoul of the First Amendment.

At the time *Alvarez* was decided, the federal statute broadly prohibited false claims about receiving military awards:

> Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States . . . shall be fined under this title, imprisoned not more than six months, or both.

18 U.S.C. § 704(b).

The *Alvarez* plurality held that this sweeping content-based restriction was too broad because it would apply to false statements "made at any time, in any place, to any person."  *Alvarez*, 567 U.S., at 722.  Most significantly, the Act did not require the false statement to be made with any illicit intent:

> The statute seeks to control and suppress all false statements on this one subject in almost limitless times and settings.  And it does so entirely without regard to whether the lie was made for the purpose of material gain.

- 13 -

*Id*. at 722-23.

The plurality added that "[w]here false claims are made to effect a fraud or secure moneys or other valuable considerations, say offers of employment, it is well established that the Government may restrict speech without affronting the First Amendment." *Id*. at 723. Along those same lines, the concurrence suggested that the Federal Stolen Valor Act could easily pass constitutional muster if it were more narrowly tailored to "focus its coverage on lies most likely to be harmful or on contexts where such lies are most likely to cause harm." *Id*. at 738 (Breyer, J., concurring).

Like the Federal Stolen Valor Act, Section 6701(b)(2) criminalizes false claims about being awarded military medals or decorations. Crucially, though, the Pennsylvania statute contains exactly what was missing in its invalid federal counterpart – a requirement that the misrepresentation be done *with intent to profit from the falsehood*.

The Commonwealth argues in this appeal and we agree that this additional intent element puts Section 6701(b)(2) in compliance with the First Amendment. As emphasized in ***Alvarez***, the Federal Stolen Valor Act was unconstitutional precisely because it criminalized speech *without requiring a showing of proof that it caused or was intended to cause harm*. By implication, and as stated explicitly in ***Alvarez***, the Federal Stolen Valor Act would be

constitutional if, like Section 6701(b)(2), the crime included the intended effect of the speech and not just the speech itself.[7]

Moreover, the First Amendment has long "permitted restrictions upon the content of speech in a few limited areas," such as obscenity, defamation, fraud, incitement and speech integral to criminal conduct. ***R.A.V. v. City of St. Paul***, 505 U.S. 377, 382 (1992); ***see also United States v. Stevens***, 130 S.Ct. 1577, 1584 (2010). "[T]he prevention and punishment of [these forms of speech] have never been thought to raise any constitutional problem." ***Chaplinsky v. New Hampshire***, 315 U.S. 568, 571-72 (1942).

Section 6701(b)(2) criminalizes speech and impersonation done with the intent to obtain some benefit. The prohibited conduct is a form of fraud, which has historically been unprotected speech under the First Amendment. ***See e.g.,*** 18 Pa.C.S. § 3922 (theft by deception statute prohibiting the use of a false impression to obtain another person's property); ***see also*** 18 Pa.C.S. § 4912 (prohibiting impersonation of a public servant with intent to induce another to submit to official authority).

By criminalizing only harmful lies about past military service, Section 6701(b)(2) has a negligible impact on constitutionally protected speech. The statute's language communicates to a person of ordinary intelligence the

---

[7] The Federal Stolen Valor Act was amended in 2013 to include a provision requiring an intent to obtain a tangible benefit from the misrepresentation. Since then, the statute has remained good law.

specific conduct that is criminalized. The statute is also narrowly tailored to criminalize speech that would cause social harm, such as the fraudulent and deceitful statements about past military service in the present case. Accordingly, we conclude that Section 6701(b)(2) is constitutionally valid and that the trial court did not err in denying Crawford's challenge.[8]

**III.**

**A.**

We now turn to Crawford's sufficiency of the evidence claims regarding each of his convictions. When determining whether the evidence is sufficient to sustain a conviction, we must view the evidence in the light most favorable to the Commonwealth. *See Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005). A conviction will be upheld if there is evidence in the record from which the finder of fact could conclude that every element of the offense has been proven beyond a reasonable doubt. *Id*. We must defer to the fact-finder's assignment of weight "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

---

[8] We clarify that our review is limited to assessing the validity of Section 6701(b)(2) under the First Amendment of the United States Constitution. Although Crawford has claimed that the statute also violates Article 1, Section 7 of the Pennsylvania Constitution, the arguments in his brief are not specifically developed on that point. Crawford's claim under the Pennsylvania Constitution is therefore waived. *See Commonwealth v. Bishop*, 217 A.3d 833, 841 (Pa. 2019) (appellant waived claim under Pennsylvania Constitution because he did not distinguish it from the United States Constitution or otherwise develop the issue separately from his federal grounds).

circumstances." *Id*. A defendant may be convicted of a crime even where the proof is wholly circumstantial, and the fact-finder is free to believe all, part or none of the evidence. *Id*.

**B.**

As to the counts of theft by unlawful taking in cases 19-CR-2126 and 19-CR-2127, we find the evidence to be legally sufficient.

A person commits this offense if "he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). In cases 19-CR-2126 and 19-CR-2127, the corpus of the theft by unlawful taking counts was the cash withdrawal of funds with the Post's debit cards and the use of the debit cards to pay for Crawford's personal expenses. The Commonwealth produced evidence that Crawford spent thousands of dollars belonging to Post 568 for his personal use and that the Post did not authorize that spending.

This conduct may constitute theft by unlawful taking, and Crawford's convictions are, therefore, supported by sufficient evidence. ***See Commonwealth v. Thomas***, 684 A.2d 1085, 1086–88 (Pa. Super. 1996) (evidence sufficient to support conviction for theft by unlawful taking where defendant was permitted to withdraw money from account for certain business expenditures, but instead withdrew money for personal expenditures).

Similarly, a person commits the crime of theft by receiving stolen property if "he intentionally receives, retains, or disposes of movable property

of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to its owner." 18 Pa.C.S. § 3925(a). As to cases 19-CR-2126 and 19-CR-2127, there was evidence that Crawford intentionally retained the funds he withdrew and spent using the Post's debit cards without the approval of the executive committee. This evidence was legally sufficient to sustain the convictions for that offense.

The counts involving misrepresentation (case 20-CR-254) were supported by sufficient evidence for the reasons already outlined above in our discussion of the respective statutes' constitutionality. It was undisputed that Crawford falsely claimed he was a military veteran of the Iraq War who received a Purple Heart. He also wore paraphernalia on a baseball cap attributed to specific military divisions of which he was not a part. There was also abundant evidence that Crawford used those falsehoods in order to become an executive member of Post 568 and then use that position for his own personal gain. These facts easily satisfy all the elements of Sections 6701(b)(1) and 6701(b)(2).

Finally, as to the counts of access device fraud (cases 19-CR-2126 and 19-CR-2127), the evidence was legally sufficient. A person commits this offense if he "uses an access device to obtain or in an attempt to obtain property or services with knowledge that . . . his use of the access device is unauthorized by the issuer or the device holder[.]" 18 Pa.C.S.

§ 4106(a)(1)(iv). Multiple witnesses at trial testified that Crawford was not authorized to use the Post's debit cards for his personal expenses. The evidence showed that Crawford made cash withdrawals with the debit cards, and that he spent thousands of dollars on himself over the course of about half a year. To the extent that Crawford presented any exculpatory evidence, it was up to the fact-finder to resolve such conflicts and assign the evidence weight. As a result, the convictions for access device fraud are supported by sufficient evidence of guilt.

## IV.

In evaluating Crawford's claim that all his convictions are against the weight of the evidence, our review concerns the trial court's exercise of discretion in denying relief, "not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013). "[A]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." **Id**.

In this case, the trial court concluded that the evidence was not against the weight of the evidence, pointing to the summary of the trial testimony as to all the subject charges. As can be seen from a review of the facts set forth above regarding each individual offense, the trial court did not abuse its discretion in making those findings.

**V.**

Crawford's next claim is that in cases 19-CR-2126 and 19-CR-2127, the offenses of theft by taking and theft by receiving stolen property must merge for sentencing purposes.[9] As discussed above, Crawford gained access to the Post's finances and then paid for personal expenses with debit cards linked to the Post's bank accounts. He also made cash withdrawals using the debit cards. At sentencing, both for cases 19-CR-2126 and 19-CR-2127, Crawford received a term of 2.5 to 5 years for one count of theft by receiving property, and a consecutive two-year term of probation for one count of theft by taking.

The evidence of Crawford's conduct is sufficient to satisfy the elements of both types of theft in each case. However, the doctrine of merger applies if different crimes arise from a single criminal act and "all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765. When crimes merge in this way, a defendant may only be sentenced on the higher graded offense(s) or on one of two different offenses of the same grade. *Id*.

_____

[9] Crawford raised the issue of merger in his 1925(b) statement, but the trial court did not address it in its 1925(a) opinion. This was likely due to the fact that Crawford had asserted over 30 separate claims, making the merger ground easy to overlook. Regardless, the sentencing claim is properly before us for consideration on the merits, and the Commonwealth has not argued otherwise.

There is merit to Crawford's claim that the theft convictions in cases 19-CR-2126 and 19-CR-2127 must be merged. In each case, the theft by taking and theft by receiving stolen property arose from a single criminal act and his intent was the same.[10] As we recently explained, "[o]ur cases have consistently held that convictions for theft by unlawful taking and receiving stolen property merge for sentencing purposes." *Commonwealth v. Winston*, 1691 EDA 2018, at *4 (Pa. Super. July 15, 2019) (unpublished memorandum) (citing *Commonwealth v. Young*, 35 A.3d 54, 63 (Pa. Super. 2011), *appeal denied*, 48 A.3d 1249 (Pa. 2012), and *Commonwealth v. Wilson*, 458 A.2d 244, 245-246 (Pa. Super. 1983)); *see also Commonwealth v. Gingrich*, 451 MDA 2017, at *7 (Pa. Super. March 20, 2018) (unpublished memorandum) ("We agree with Appellant and the Commonwealth and conclude that Appellant is indeed entitled to relief on this claim, as both convictions arose from the same criminal act[.]").

_____

[10] The Commonwealth's sole argument here is that the counts do not merge because the offenses have different intent elements – theft by taking requires an intent to deprive a rightful owner of their property, and theft by receiving stolen property requires depriving the rightful owner of their property without intent to restore possession. *See* Appellee's Brief, at 40-41. Again, we discern no practical difference in this case. If, as the trial court found, Crawford committed a theft by using the Post's debit card (theft by taking), then he necessarily had no intention of paying the Post back (theft by receiving stolen property). The intent is identical, so Crawford could only be sentenced on one of the two counts.

To remedy this error, we vacate the portion of the judgment of sentence pertaining to these counts in cases 19-CR-2126 and 19-CR-2127 and remand for a resentencing. *See Commonwealth v. Owens*, 649 A.2d 129, 139 (Pa. Super. 1994) ("Where a correction of sentence is needed, this Court has the option of amending the sentence directly or remanding to the lower court for resentencing.").

**VI.**

Finally, we consider Crawford's claim that he received an excessive sentence because some of the terms were set to run consecutively.[11]

Such claims concern a discretionary aspect of the sentencing. As such, this Court's jurisdiction is limited because discretionary aspects of a sentence are not appealable as of right. *See Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000). Before reaching the merits of such issues, the appellant must satisfy a four-part test: (1) whether the appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved; (3) whether the appellant's brief has a fatal defect; and (4) whether there is a "substantial question" whether the sentence comports with the Sentencing

---

[11] Our analysis of this excessive sentence claim does not encompass Crawford's sentences as to the two theft counts in case 19-CR-2126. As discussed in Part V of this opinion, Crawford will be entitled to a resentencing as to those counts because they should have been merged for sentencing purposes.

Code, 42 Pa.C.S. § 9781(b). *See Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

In the present case, Crawford filed a timely notice of appeal, preserved his issue in a post-sentence motion, and outlined the basis for a substantial question in his brief pursuant to Pa.R.A.P. 2119(f). The final requirement, whether Crawford raises a substantial question meriting our discretionary review, "must be evaluated on a case-by-case basis." *Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018).

A "substantial question" involves whether a sentence follows the Sentencing Code and fundamental norms that underlie the sentencing process. *See Bullock*, 868 A.2d at 528. A substantial question is raised, for example, by claims that the reasons for the sentence are not sufficiently stated on the record or the sentencing court has relied on improper sentencing factors. *See Commonwealth v. Roden*, 730 A.2d 995, 997 (Pa. Super. 1999).

Crawford's claim does not raise a substantial question. He was sentenced within the standard range of the statutory guidelines to an aggregate prison term of 6 to 12 years, and he recognizes that the consecutive terms were within the trial court's discretion. In sum, Crawford believes that the severity of his sentence does not fit the crimes, and that his consecutive terms should be made concurrent. Bald claims of excessiveness do not

amount to a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763 (Pa. Super. 2015).

Even if we were to reach the merits of this claim, we would still deny appellate relief. As the trial court found, the evidence shows that Crawford deliberately ingratiated himself with a fraternity of military veterans and then abused their confidence over a period of months by using over $17,000 of their limited funds on a number of frivolous personal expenditures. When imposing sentence, the trial court emphasized that the subject offenses were "a severe affront" to the victims, and that Crawford was "motivated by greed and convenience with no remorse whatsoever and no acceptance of responsibility." Trial Court Opinion, 9/29/2020, at 14.

The sentence is not unduly harsh or unreasonable considering the nature of Crawford's crimes. *See Commonwealth v. Moury*, 992 A.2d 162, 171-72 (Pa. Super. 2010) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment."). Except for the merger of the theft convictions in cases 19-CR-2126 and 19-CR-2127, the trial court's sentence was not an abuse of discretion.

Judgment of sentence affirmed in part and reversed in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/18/2021