J-S11020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
    :  PENNSYLVANIA
    :
v.    :
    :
    :
MARK GREGORY DAVIS    :
    :
Appellant    :  No. 2781 EDA 2022

Appeal from the Judgment of Sentence Entered August 17, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004094-2021

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:    **FILED AUGUST 03, 2023**

Mark Gregory Davis appeals from the judgment of sentence entered following his open guilty plea to driving under the influence ("DUI") – controlled substance, recklessly endangering another person, possession of paraphernalia, and illegally operating a vehicle without ignition interlock.[1] Davis argues the court abused its discretion by imposing an excessive sentence. We affirm.

On April 16, 2021, Falls Township police officers and fire fighters responded to an accident that caused a vehicle to catch fire on Route 13 North in Bucks County. N.T., 2/1/22, at 6-7, 17; N.T., 8/17/22, at 3. The first responders blocked off a portion of the road with a barricade consisting of 30 flares, 75 to 80 cones, and six or seven police and fire vehicles, all with

_____

[1] 75 Pa.C.S.A. § 3802(d)(2); 18 Pa.C.S.A. § 2705; 35 P.S. § 780-113(a)(32); and 75 Pa.C.S.A § 3808(a)(1), respectively.

flashing lights. N.T., 2/1/22, at 7-10. The barricade and lights were about 600 yards away from the accident. *Id.* at 10. As a result of the barricade, oncoming traffic had to exit Route 13. *Id.*

Davis failed to exit Route 13 and drove through the barricade at an estimated speed of 70 miles per hour. *Id.* at 18. Davis brought his vehicle to a stop once he reached the firetrucks that had the roadway completely blocked off. *Id.* Officer Michael Parnes approached the stopped vehicle and directed Davis to get out of his vehicle. *Id.* at 19. Officer Parnes detected the odor of alcohol and marijuana. *Id.* Additionally, as Davis was pulled out of his vehicle, officers observed a glass smoking device, previously on Davis's lap, fall to the ground. *Id.* at 20. At that point in time, Officer Parnes believed that Davis was under the influence of a controlled substance and alcohol, such that Davis was unable to safely operate his vehicle. *Id.* at 24. Davis refused to submit to a blood draw and no field sobriety tests were conducted because of safety concerns related to the vehicle fire. *Id.* at 21, 24-25. Officer Parnes conducted a search of Davis's driving history and learned that Davis was required to have an ignition interlock device in his vehicle. *Id.* at 26. Davis's vehicle did not have an ignition interlock device at the time of the incident. N.T., 8/17/22 at 10.

On June 13, 2021, Davis pleaded guilty to the above-referenced offenses. At sentencing, on August 17, 2022, Davis stated that he had been speeding on the night of the incident, but that he was confused about what had occurred on the roadway during his incident. *Id.* at 6. Davis also said he

did not know he was required to have an ignition interlock device in his vehicle. *Id.* at 10. Davis spoke about his addiction issues, his decision to have his parents adopt his daughter, and his past drug treatment success. *Id.* at 8, 13-14. Davis concluded by speaking about his desire to get back to his family, friends, passions, hobbies, and work. *Id.* at 13-14. Davis also submitted a letter to the court.

Before imposing Davis's sentence, the court stated:

Okay. Let's not forget what charges are here. Third offense driving under the influence, recklessly endangering four different people, all of whom I assume are first responders trying to protect the safety of the community, having the paraphernalia with you. . . driving a vehicle that you were prohibited from operating because it did not have an ignition interlock control because of your prior drunk driving charges.

You have provided me with a 13-page, small-writing statement in which at no time did you accept responsibility for your conduct, did you at no time show any remorse for your conduct, at no time did you show any sympathy or understanding of the harm you put other people in. All you talked about was how you had been picked on throughout your life.

You don't care about anybody but yourself. You profess to have this love for your child. I'm not saying you don't, but you seem to think that means that you can do as you please and have no responsibility and that your daughter is your keep-out-of-jail-free card. It ain't happening.

You've been through the system. You've been through jail. You've been on probation. You've been in treatment. At times you successfully completed it.

But you are a danger to the community. I have no doubt in my mind that when you walk out of a state correctional institution in the future the first opportunity you have to get high, to get behind the wheel of the car and go out and do as you please, you'll do. You won't even hesitate to think about the repercussions to

yourself should you get caught driving or what you might do to other people.

I am going to impose a sentence in the aggravated range of the DUI, and I'm doing that, one, because of those issues I just mentioned: the lack of remorse, the lack of an acceptance of responsibility, the multiple persons in jeopardy. But I'm doing it also because I won't put – impose sentences on the other open counts.

*Id.* at 14-16.

At the conclusion of sentencing hearing, the court imposed a sentence in the aggravated range of 27 to 60 months' incarceration on the DUI offense, with no further penalty on the other charges.

Davis filed a motion for reconsideration of sentence. At a hearing on the motion, Davis apologized and explained that the goal of his letter to the court was to paint a broad picture of himself and factors of his personal life. N.T., 9/26/22, at 3-7. After hearing testimony from Davis, the court denied the motion. *Id.* at 7.

Before denying the motion, the court stated:

Let me say this, Mr. Davis. I don't question your remorse and your apology. I don't challenge that . . .

But, look, I hear what you're saying. But all those various factors were taken into consideration at the time of sentencing.

*Id.* at 5, 7.

Davis filed a timely appeal. Davis raises the following issue:

Did the trial court abuse its discretion in sentencing [Davis] by imposing a manifestly excessive sentence at the high end of the aggravated range, relying on improper factors and the nature of the offense and failing to consider all relevant factors?

Davis's Br. at 7.

Davis challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of Davis's claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019); ***see also*** Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Davis has complied with the first three requirements: his appeal is timely, he preserved the issue in a post-sentence motion, and his brief includes a statement of the reasons for allowance of appeal. We now turn to whether Davis has raised a substantial question.

A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). Davis's Rule 2119(f) statement claims that

the sentencing court failed to consider relevant factors such as family history, age, or rehabilitative needs and considered improper factors. Davis's Br. at 9-10. This presents a substantial question. **See Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa.Super. 2014) (stating "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question"); **see also Commonwealth v. Snyder**, 289 A.3d 1121, 1126 (Pa.Super. 2023) (finding an excessive sentence claim coupled with a claim of disregard for appellant's "rehabilitative potential" raises a substantial question); **Commonwealth v. Crawford**, 254 A.3d 769, 782 (Pa.Super. 2021) (stating that a claim that the sentencing court relied on improper factors raises a substantial question). Thus, we proceed to the merits of Davis's claim.

Davis argues that the sentencing court relied on improper factors, focused on the nature of the offense that was already addressed by the Sentencing Guidelines, and failed to consider all relevant factors. Davis's Br. at 11-16. With respect to improper factors, Davis argues that the court justified its sentence, in part, "on the inappropriate and unfounded belief that [Davis] will use drugs and commit another DUI, as soon as possible" and "[Davis's] lack of remorse." **Id.** at 14. Davis further argues that the sentencing court focused on factors related to the nature of the offenses that were already contemplated in the Sentencing Guidelines, namely, elements of the offense to which Davis entered his guilty plea. **Id.** at 15. He contends that the sentencing court failed to consider relevant factors, including his history and

character and his rehabilitative needs. *Id.* at 15-16. Additionally, Davis argues that the sentencing court's statements during the hearing on his motion for reconsideration of sentence indicates acknowledgment of his remorse, such that the sentencing court should be precluded from relying on lack of remorse to justify sentencing Davis in the aggravated range. *Id.* at 15.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). However, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court. *See Commonwealth v. Peck*, 202 A.3d 739, 747 (Pa.Super. 2019).

In imposing a sentence, the sentencing court must consider, "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Moreover, "[a] sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed." *Commonwealth v. Stewart*, 867 A.2d 589, 592-93 (Pa.Super. 2015). Further, the sentencing judge's reasons for sentencing in the aggravated range must reflect this consideration. *Id.* at 593. Additionally, the Sentencing Guidelines "are merely one factor among many

that the court must consider in imposing a sentence." ***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007).

Here, although the court sentenced Davis in the aggravated range, it is still within the Sentencing Guidelines. The court conducted the sentencing without any improper considerations. The record reflects that, at the time of sentencing, the court considered the fact that Davis's actions posed a threat to the public and to the safety of the public officials at the scene who themselves are tasked with ensuring the safety of the public. The record also indicates that the court considered the absence of the required ignition interlock, the fact that it was Davis's third offense, and the lack of remorse, sympathy, or responsibility in Davis's letter. Those facts clearly relate to public safety and the gravity of the offense. Further, the sentencing court referenced the letter and stated that, despite the trials and tribulations outlined in the letter, Davis posed a danger to the community to such a degree that the aggravated sentence was appropriate. The court also considered Davis's rehabilitative needs and he was given the opportunity, in his letter and testimony at sentencing, to touch upon his struggles with addiction, drug use at the time of the incident, and past success in drug treatment. At no point did the sentencing court deprive Davis of informing it of his history of addiction and past treatment.

With respect to the court's comments that Davis would reoffend when released from prison, which Davis claims the court improperly considered, there is no information in the record to indicate that the hyperbolic statement

is indicative of a founded belief that Davis would reoffend immediately following the conclusion of his incarceration. Rather, the court's stated reasoning in imposing the aggravated sentence, coupled with the history of committing the same offense, reflects a concern that, given his history, Davis may commit the same crime, at any point in time, and pose a threat to the safety of the community.

Second, the court did not focus solely on factors already contemplated by the sentencing guidelines. The fact that Davis drove under the influence of a controlled substance for the third time and jeopardized the lives of first responders as a result, is not merely an element of the crime of DUI. The crime of DUI – impaired ability provides, in relevant part, that, "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle," when "[t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2).

The factors considered by the court, including the presence of a barricade that all the other motorists followed, the presence of officers, and the fact that it was a third offense, are not elements of the offense. Rather, those factors were considered, in conjunction with all other legally relevant factors and the elements of the above offense, to decide that the aggravated range sentence was appropriate. Additionally, the Sentencing Guidelines serve as a guide and are not controlling. *See **Yuhasz***, 923 A.2d at 1118 (stating

that the Sentencing Guidelines "are purely advisory in nature"). The fact that the number of convictions is factored into Sentencing Guidelines is not determinative. Rather, it is one factor that the court considered, and that it was the third conviction was not the sole basis of the sentence. On the issue of consideration of all relevant factors, the court expressly stated, at the motion for reconsideration of sentence hearing, that it considered Davis's work history, parental struggles, and treatment needs.

The court's reasons for its sentence expressed an appropriate consideration of the protection of the public, the gravity of the offense as it related to the impact on the life on the victims and on the community, and the rehabilitative needs of Davis. **See** 42 Pa.C.S.A. § 9721(b). We discern no abuse of discretion.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/3/2023*