J-S15044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT D. TRUMBULL | : | |
| | : | |
| Appellant | : | No. 1495 EDA 2021 |

Appeal from the Judgment of Sentence Entered May 24, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001100-2018

BEFORE:  NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED OCTOBER 25, 2022**

Robert D. Trumbull ("Trumbull") appeals *nunc pro tunc* from the judgment of sentence imposed after a jury found him guilty of homicide by vehicle while driving under the influence ("DUI"), homicide by vehicle, and related offenses.[1]  Trumbull's counsel ("Counsel") has filed a petition to withdraw and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We affirm and grant Counsel's petition to withdraw.

The trial court summarized the factual background of Trumbull's convictions as follows:

> On March 20, 2016, at approximately 10:40 p.m., . . . Trumbull was driving . . . on I-95 North after leaving a casino in Chester, Pennsylvania.  The weather was freezing rain. [Trumbull] was driving at a speed of approximately 100 miles per

---

[1] **See** 75 Pa.C.S.A. §§ 3735(a), 3732(a); **see also** 18 Pa.C.S.A. § 2504(a), 75 Pa.C.S.A. § 3802(a)(1).

hour in a 55 mile per hour zone and switching [from the right lane, to the center lane, to the left lane].  While in the left lane, [Trumbull] rapidly approached . . . Ronald Banks ["Mr. Banks"]. Upon seeing [Trumbull's] headlights approaching at a high speed, Mr. Banks attempted to speed up in order to lessen the inevitable impact from [Trumbull's] car.  [Trumbull] rear-ended Mr. Banks's [vehicle] at about 75 or 80 miles per hour.  [Trumbull's] car hit the center barrier and came to a stop perpendicular to the road, with [his car's] hood touching the barrier.  As a result of being rear-ended, Mr. Banks pulled his [vehicle] over onto the right shoulder.

At the same time, Andrew Jimenez ["Mr. Jimenez"], was driving . . . northbound on I-95.  [Mr. Jimenez testified that Trumbull changed lanes and then passed him so fast that his car shook.  Mr. Jimenez estimated that Trumbull was driving at approximately 90 to 100 miles per hour.]  Mr. Jimenez witnessed [Trumbull] rear-end Mr. Banks.  Mr. Jimenez passed [Trumbull's car] and pulled over to the left side of the road to render assistance.  [Mr. Jimenez] pulled partly on the shoulder and partly in the left lane because [Trumbull's car] was turned toward the center median and blocking the left lane.  Mr. Jimenez put his hazard lights on, instructed his passenger to call 911, and started jogging back toward [Trumbull's car].

Decedent, Maurice Williams ["Mr. Williams"], was driving . . . northbound on I-95 when he struck the part of [Trumbull's car] that blocking the left lane, sending [Trumbull's car] rotating into Mr. Jimenez.  Mr. Jimenez was thrown into the air, hit [Trumbull's car], and fell onto the pavement . . ..  [Trumbull's car] came to rest facing oncoming traffic[, and Mr. Williams's car] to rest in the left lane perpendicular to the roadway.

Varney Freeman ["Mr. Freeman"] was driving northbound on I-95 in the center lane when he observed debris from the crash on the road and moved into the left lane to avoid hitting it.  In the left lane, Mr. Freeman[, who had been driving 83 miles per hour, began slowing down, but] hit the side of [Mr. Williams's car] at a speed of 68 miles per hour, pushing [Mr. Williams's car] into [Mr. Jimenez's car] and killing Mr. Williams [due to the] multiple blunt impact injuries caused by the accident.

Trial Court Opinion, 9/21/21, at 3-4 (citations to the record omitted).

Trumbull told an EMT who was transporting him from the accident scene that

he had a few beers that night, and he later told a social worker at the hospital that he had had three cocktails.  *See* N.T., 2/12/19, at 97-98; N.T., 2/13/19, at 29.  Testing of Trumbull's blood sample indicated that Trumbull had a blood alcohol content of 0.097%.[2]  *See* N.T., 2/13/19, at 37, 39-40.

The Commonwealth charged Trumbull with numerous offenses for the death of Mr. Williams and the injuries suffered by Mr. Jimenez.  At trial, the Commonwealth, in relevant part, called Mr. Banks, Mr. Jimenez, and Mr. Freeman, who testified regarding the first accident between Trumbull and Mr. Banks,[3] the second accident between Mr. Williams and Trumbull, and the third, fatal, accident between Mr. Freeman and Mr. Williams.  Additionally, the Commonwealth called expert witnesses, namely, an accident reconstructionist and a forensic pathologist who testified that Trumbull's accident with Mr. Banks initiated a chain of events that led to the fatal accident between Mr. Freeman and Mr. Williams and that Trumbull's consumption of alcohol rendered him incapable of safely driving at the time of the first accident.  *See* N.T., 2/12/19, at 101-223; N.T., 2/13/19, at 30-43.  The jury found Trumbull

_____

[2] The investigating Pennsylvania State Troopers obtained Trumbull's blood sample and sent it for testing pursuant to a search warrant.

[3] At trial, Mr. Banks stated that he had previously been cited for illegal taillight lenses on his car but removed those lenses six months before the accident. *See* N.T., 2/12/19, at 34-37, 44.  In his closing argument, Trumbull's trial counsel asserted that Trumbull rear-ended Mr. Banks because Trumbull could not see Mr. Banks's car and that the investigators failed to determine whether Mr. Banks had illegal taillight lenses on his car at the time of the accident. *See* N.T., 2/13/19, at 104.

guilty of homicide by vehicle while DUI, homicide by vehicle, involuntary manslaughter, and DUI.[4]

The trial court sentenced Trumbull to three to six years of imprisonment for homicide by vehicle while DUI and a consecutive one to two years of imprisonment for homicide by vehicle. Trumbull filed a timely post-sentence motion, which the trial court denied.[5] Trumbull took a direct appeal, but this Court dismissed the appeal after Trumbull failed to file a brief. *See* Order, 2993 EDA 2019, 2/19/20. Trumbull timely requested reinstatement of his direct appeal pursuant to the Post Conviction Relief Act ("PCRA"),[6] which the court granted. Trumbull filed a timely notice of appeal, and a Pa.R.A.P. 1925(b) statement challenging the sufficiency of the evidence as to causation, the weight of the evidence, and the trial court's decision to impose consecutive sentences. The trial court filed a responsive Rule 1925(a) opinion. Counsel subsequently filed a petition to withdraw and an *Anders* brief in this Court.

When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to

---

[4] The jury found Trumbull not guilty of the offenses related to Mr. Jimenez.

[5] Trumbull titled his motion as seeking extraordinary relief and requested judgments of acquittal. *See* Post-Sentence Motion, 6/3/19, at 2, 4. The motion requested in the alternative, but without further argument, that the sentences for homicide by vehicle while DUI and homicide by vehicle be ordered to run concurrently. *See id*. at 4.

[6] *See* 42 Pa.C.S.A. §§ 9541-9546. Trumbull did not request, nor did the PCRA court grant, a reinstatement of Trumbull's right to file post-sentence motions.

- 4 -

withdraw. *See Commonwealth v. Garang*, 9 A.3d 237, 240 (Pa. Super. 2010). Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention.

*Commonwealth v. Edwards*, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Edwards*, 906 A.2d at 1228 (citation omitted).

Counsel's petition to withdraw certifies his thorough and conscientious examination of the record and his determination that Trumbull's appeal is frivolous. Counsel's *Anders* brief includes a summary of the procedural history and facts of the case, the issues raised by Trumbull that arguably support the appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Counsel avers that he provided Trumbull with copies of his petition to withdraw and *Anders* brief and attached to his petition a letter he sent to Trumbull informing him of his rights to proceed *pro se* or with new counsel. Accordingly, Counsel complied with the requirements of *Anders* and *Santiago*. We therefore conduct an independent review to determine whether Trumbull's appeal is wholly frivolous.

Counsel identifies the following issues in Trumbull's appeal:

1. Whether [Trumbull's] convictions . . . are based upon insufficient evidence that [he] actually caused the accident and the death of [Mr. Williams]?

2. Whether [Trumbull's] convictions . . . were against the weight of the evidence and shocking to one's sense of justice where the Commonwealth did not prove causation beyond a reasonable doubt . . .?

3. Whether the sentencing court abused its discretion at sentencing when it sentenced [Trumbull] to consecutive sentences for homicide by vehicle while [DUI] and homicide by vehicle where[,] in light of the many mitigating circumstances[,] the imposition of a consecutive sentence presents a substantial question that the sentence is inappropriate because it is contrary to the norms underlying the Sentencing Code?

*Anders* Brief at 6-7 (reordered).[7]

Counsel first discusses Trumbull's intended challenge to the sufficiency of the evidence for all of his convictions. "In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." *Commonwealth v. Sanders*, 259 A.3d 524, 528 (Pa. Super. 2021) (*en banc*), *appeal denied*, 278 A.3d 857 (Pa. 2022). It is within the province of the trier of fact to determine the credibility of witnesses and weight to be accorded the evidence produced, and to believe all, part, or none of the evidence. *See Commonwealth v. Nicotra*, 625 A.2d 1259, 1261 (Pa. Super. 1993); *see also Commonwealth v. Cruz*, 71 A.3d 998, 1009 (Pa. Super. 2013) (stating that "the jury retains the responsibility of determining whether opinion evidence is relevant, and, if so, what weight to assign it") (internal citation omitted). The Commonwealth need not preclude every possibility of a defendant's innocence, and any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *See Commonwealth v. Grays*, 167 A.3d 793, 806 (Pa. Super. 2017).

_____

[7] Trumbull has not responded to Counsel's petition to withdraw or *Anders* brief, and he has not filed a separate brief either *pro se* or with new counsel.

The statutory definitions of Trumbull's convictions are as follows. Section 3732 of the Motor Vehicle Code defines homicide by vehicle as:

> Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth . . . applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a).

Section 3735 defines homicide by vehicle while DUI, in relevant part, as: "A person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree[.]" 75 Pa.C.S.A. § 3735(a) (subsequently amended effective December 2018).

Relatedly, the Vehicle Code prohibits driving a vehicle "at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead," 75 Pa.C.S.A. § 3361, and driving "at a speed in excess of the . . . maximum speed limit." *Id*. § 3362(a). Section 3802 of the Vehicle Code further defines DUI, in relevant part, as driving, operating, or being in actual physical control of the movement of a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely

driving, operating or being in actual physical control of the movement of the vehicle." *Id*. § 3802(a)(1).

Lastly, section 2504 of the Crimes Code defines involuntary manslaughter as: "[a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."  18 Pa.C.S.A. § 2504(a).

Counsel outlines Trumbull's intended sufficiency of the evidence arguments and notes Trumbull's record-based claims that (1) the Commonwealth failed to prove that he was speeding because there were discrepancies in the testimony of how fast Trumbull was driving before the accident; (2) Mr. Banks caused the first accident by modifying his car in a manner that made it difficult to see; (3) Trumbull's blood alcohol level had no bearing on his ability to drive safely; and (4) the Commonwealth's expert was not able to relate the effects of alcohol back to the time of the accident or Trumbull's ability to drive.  Counsel concludes that these arguments are legally frivolous.

The trial court addressed these claims and concluded that there was sufficient evidence sustaining Trumbull's convictions for homicide by vehicle, homicide by vehicle while DUI, and involuntary manslaughter.[8]  As to homicide

---

[8] The trial court found, and Trumbull has not contested, that there was sufficient evidence of his recklessness to establish homicide by vehicle and involuntary manslaughter.

by vehicle, the trial court explained there was testimony that Trumbull was driving approximately 100 miles per hour in a 55 mile per hour zone and was switching lanes shortly before the first accident between Trumbull and Mr. Banks. *See* Trial Court Opinion, 9/21/21, at 7-8. The trial court also noted the evidence that Trumbull was driving 75 to 80 miles per hours when he struck the rear of Mr. Banks's car. *See id*. at 8. As to homicide by vehicle while DUI, the trial court explained that there was sufficient evidence that Trumbull had consumed alcohol and, based on expert testimony, was incapable of safely driving at the time of the accidents. *See id*. at 10. The trial court determined that Trumbull's arguments concerning the discrepant testimony about his speed before the accident and the possible modifications to Mr. Banks's vehicle concerned the weight, not the sufficiency, of the evidence. *See id*. at 11-12.

Our review confirms that Trumbull's record-based sufficiency arguments lack support in either the record or the law. Trumbull's reliance on the discrepancies between Mr. Jimenez's testimony that Trumbull passed him at 90 to 100 miles per hour and Mr. Banks's testimony estimating that Trumbull struck the rear of his vehicle at 75 to 80 miles per hour disregards our standard of reviewing a challenge to the sufficiency of the evidence. It was within the province of the jury to resolve the alleged conflicts in the evidence, *see Grays*, 167 A.3d at 806, and regardless, the testimony clearly established that Trumbull was driving over the speed limit when he passed Mr. Jimenez and immediately before the first accident with Mr. Banks. *See* N.T., 2/12/19,

at 18 (indicating that Mr. Banks estimated that Trumbull struck him at 75 to 80 miles per hour); **see also id**. at 56 (indicating that Mr. Jimenez estimated that Trumbull passed him at 90 to 100 miles per hour).

Trumbull's emphasis on the possibility that he could not have seen Mr. Banks's car also fails. The Commonwealth was under no obligation to rule out all possible causes or factors in the accident. **Cf. Grays**, 167 A.3d at 806.[9] Further, there was no evidence that at the time of the accident, Mr. Banks had modified his car in a manner that made its taillights difficult to see. **See** N.T., 2/12/19, at 34-37, 44 (indicating that Mr. Banks removed his illegal taillight lenses six months **before** the accident).

The record further belies Trumbull's assertion that the Commonwealth failed to establish that alcohol did not impair his ability to drive safely at the time of the accident. The Commonwealth's forensic pathologist testified that based on Trumbull's blood-alcohol concentration, the amount of alcohol he consumed would have affected "his judgment, his clarity of intellect," and ability to "evaluate [his] surrounding[,]" and, therefore, impaired his ability to operate a motor vehicle safely at the time of the accident. **See** N.T., 2/13/19,

---

[9] Trumbull also asserts that the weather could have been a factor causing the accidents. However, he did not preserve this argument in his Rule 1925(b) statement, and the trial court did not address it. Nevertheless, Trumbull's argument based on adverse road conditions would fail for the same reason, *i.e.*, that the Commonwealth is not required to establish a defendant's guilt to a mathematical certainty and that it was in the province of the jury to consider how the weather conditions may have played a role in the accidents. **Cf. Grays**, 167 A.3d at 806.

at 40, 43-44. Thus, Trumbull's record-based challenges to the sufficiency of the evidence are frivolous.

Additionally, Counsel notes Trumbull's assertion that the evidence was insufficient because he was not the actual cause of Mr. Williams's death. According to Counsel, Trumbull emphasizes that Mr. Freeman was also driving over the speed limit and was responsible for the third, fatal, accident when Mr. Freeman struck Mr. Williams's car.

It is well settled that causation is an element of the crimes of homicide by vehicle, homicide by vehicle while DUI, and involuntary manslaughter that the Commonwealth must prove beyond a reasonable doubt. *See* *Commonwealth v. Lenhart,* 553 A.2d 909, 912 (Pa. 1989) (discussing causation as an element of homicide by vehicle while DUI); *Sanders*, 259 A.3d at 530 (discussing causation as an element of homicide by vehicle); *Commonwealth v. Nunn*, 947 A.2d 756, 760 (Pa. Super. 2008) (discussing causation as an element of involuntary manslaughter). "Causation is an issue of fact for the jury." *Commonwealth v. Kostra*, 502 A.2d 1287, 1289 (Pa. Super. 1985).

The Crimes Code defines causation in relevant part as: "Conduct is a cause of the result when . . . it is an antecedent but for which the result in question would not have occurred[.]" *See* 18 Pa.C.S.A. § 303(a)(1). It is well settled that the defendant's conduct need not be the only cause of the victim's death so long as the conduct was a direct and substantial factor in

producing the death even though other factors combined with that conduct to achieve the result.  **See Nunn**, 947 A.2d at 760.[10]

Counsel asserts that Trumbull's causation argument lacks arguable merit because the evidence was sufficient for the jury to conclude that Trumbull's speeding and driving after drinking set off the chain of events that caused Mr. Williams's death.  The trial court also considered the sufficiency of the evidence establishing causation and reasoned there was ample evidence for the jury to find that Trumbull's driving in excess of the speed limit and impairments due to alcohol caused the first accident between Trumbull and Mr. Banks.  **See** Trial Court Opinion, 9/21/21, at 9, 12.  The trial court further

_____

[10] We note that causation in criminal matters has two parts.  Relevantly, a defendant's conduct must be an antecedent **and** the actual result cannot be too remote or accidental.  **See** 18 Pa.C.S.A. § 303(a), (c)(2).  Under the second part of this standard, the victim's death must be the natural or foreseeable consequence of the defendant's actions.  **See Nunn**, 947 A.2d at 760.  If "the fatal result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt."  **See id**. (internal citation and quotations omitted).  As our courts have recognized, a "more direct causal connection" is required in criminal law than in the tort law concept of proximate cause.  **Commonwealth v. Root**, 170 A.2d 310, 314 (Pa. 1961); **accord Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1256 (Pa. Super. 2014).  In the instant matter, Trumbull's Rule 1925(b) statement did not preserve a claim that Mr. Williams's death due to the third accident between Mr. Freeman and Mr. Williams was too unforeseeable or remote from Trumbull's first accident with Mr. Banks to impose criminal liability.  **See** Rule 1925(b) Statement, 8/1/21, at 1  (asserting that Trumbull's convictions "were based on insufficient evidence that [Trumbull] actually caused the accident and the death of [Mr. Williams]").  In any event, and for the reasons stated herein, we conclude that the Commonwealth's evidence was sufficient to establish that Trumbull was a direct and substantial factor in the events leading to  Mr. Williams's death.

explained that "the jury heard testimony from eyewitnesses, first responders, and a crash reconstruction expert that [Trumbull's] high-speed rear-ending of Mr. Banks[ ] . . . started the 'domino effect' accident that led to Mr. Williams's death." *Id*. at 7-8. The court continued, "Although Mr. Freeman[ ] . . . was the immediate cause of Mr. Williams's death, had [Trumbull] not started the chain reaction that led to the multi-vehicle accident, the death would not have occurred." *Id*. at 7-8.

We discern no error in the trial court's discussion. Trumbull caused the first accident when he rear-ended Mr. Banks's car, and as noted above, there was ample circumstantial and expert evidence that the first accident resulted from Trumbull's excessive speed and consumption of alcohol. After the first accident, portions of Trumbull's vehicle remained in the left lane. *See* N.T. 2/12/19, at 203. Mr. Williams then struck Trumbull's vehicle in the non-fatal second accident, and Mr. Williams's car came to a rest leaving the broad side of his car exposed in the left lane. *See id*. at 204-05. Mr. Freeman then struck Mr. Williams's car on the broad side of Mr. Williams's car killing Mr. Williams.[11] *See id*. at 205. Based on this record, we agree with Counsel's and

_____

[11] We acknowledge the trial evidence that Mr. Freeman was also speeding before he struck Mr. Williams. *See* N.T., 2/12/19, at 213. Through cross-examination, Trumbull also presented testimony that there was a possibility that if Mr. Freeman had been driving slower, the impact with Mr. Williams would not have been fatal. *See id*. at 236. While Mr. Freeman's speeding may have contributed to Mr. Williams's death, we discern no basis to conclude that Mr. Freeman was a superseding cause in the chain of events. Rather, the trial evidence established that Trumbull's initial accident placed Mr.
*(Footnote Continued Next Page)*

the trial court's conclusions that there was sufficient evidence that Trumbull was a direct and substantial factor standard in Mr. Williams's death. **See Commonwealth v. Francis**, 665 A.2d 821, 823 (Pa. Super. 1995) (finding sufficient evidence to establish causation when Francis backed up in the middle of a highway forcing the victim to lose control of his vehicle, which, in turn, resulted in a multiple vehicle accident in which the victim was killed). In sum, we concur with Counsel's and the trial court's conclusions that Trumbull's intended challenges to the sufficiency of the evidence are frivolous.

Counsel next identifies Trumbull's weight of the evidence claim based on arguments similar to his sufficiency claims. However, our review of the record establishes that Trumbull did not preserve a weight of the evidence claim by seeking a new trial[12] or requesting reinstatement of his right to file a post-sentence motion for a new trial. **See** Pa.R.Crim.P. 607 (requiring a weight of the evidence claim to be raised in a motion for new trial). Instead, he raised his argument for the first time in the Rule 1925(b) statement he filed in anticipation of this *nunc pro tunc* appeal. This does not preserve the issue for appeal. **See Commonwealth v. Sherwood**, 982 A.2d 483, 494

---

Williams in the position of striking Trumbull's car and then to be struck by Mr. Freeman. It was within the province of the jury to weigh all of the evidence concerning causation and determine that Trumbull caused Mr. Williams's death. **See Commonwealth v. Hicks**, 353 A.2d 803, 805 (Pa. 1976) (noting that causation is an issue of fact for the factfinder).

[12] Although Trumbull filed a post-sentence motion for extraordinary relief noting discrepancies in the trial evidence, he sought a judgment of acquittal and did not request a new trial.

(Pa. 2009) (holding that a weight of the evidence claim not presented to the trial court but instead raised for the first time in a Rule 1925(b) statement is waived, even if the trial court's Rule 1925(a) opinion considers the issue).

Even if Trumbull had preserved his weight of the evidence issue, however, we would discern no abuse of discretion in the trial court's reasons for rejecting it. The trial court noted that the record belied Trumbull's arguments that Mr. Banks's car was difficult to see and Mr. Freeman's reckless driving was a superseding cause in the third accident that caused Mr. Williams's death. We agree with the trial court that "the evidence fully supported the verdict[s], [and Trumbull's] convictions were not against the weight of the evidence." *See* Trial Court Opinion, 9/21/21, at 11-13; *see also Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) (noting that "[a]ppellate review of a weight claim is a review of the exercise of discretion" and that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice") (internal citation omitted). Accordingly, no relief would be due based on Trumbull's proposed challenges to the weight of the evidence.

Counsel next outlines Trumbull's assertion that the trial court abused its discretion when imposing consecutive sentences for homicide by vehicle while

DUI and homicide by vehicle.[13]  A challenge to the discretionary aspects of a sentence does not entitle an appellant to review as of right.  **See Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010).  Rather, such a challenge must be considered a petition for permission to appeal.  **See Commonwealth v. Christman**, 225 A.3d 1104, 1107 (Pa. Super. 2019).  Before reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Moury**, 992 A.2d at 170 (internal citation and brackets omitted).

Instantly, Trumbull filed a post-sentence motion in which he baldly requested that the trial court resentence him to concurrent sentences. Counsel's **Anders** brief states that Trumbull believes his sentences were excessive because the trial court failed to consider mitigating factors.

We find that Trumbull waived his intended challenge to his sentence because he failed to preserve any meaningful sentencing claim in his post-sentence motion.  **See Moury**, 992 A.2d at 172.  Moreover, a boilerplate assertion that consecutive sentences are excessive does not raise a substantial question meriting appellate review.  **See Commonwealth v.**

---

[13] Homicide by vehicle and homicide by vehicle while DUI do not merge because they contain mutually exclusive elements. **See Commonwealth v. Collins**, 764 A.2d 1056, 1059 (Pa. 2001).

*Crawford*, 254 A.3d 769, 782 (Pa. Super. 2021), *appeal denied*, 267 A.3d 487 (Pa. 2021).[14]

Having independently reviewed the record, we agree with Counsel's assessment that this appeal is frivolous. Moreover, finding no additional issues of arguable merit preserved for this appeal, we affirm the judgment of sentence and grant Counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

_____

[14] Even if preserved, Trumbull's issue is meritless. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *See **Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa. Super. 2009) (internal citations omitted). A trial court that has the benefit of a pre-sentence investigation report is presumed to be aware of the relevant sentencing considerations. *See **Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009). Moreover, a sentencing court retains discretion whether to impose concurrent or consecutive sentences. *See **Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

Here, as the trial court observed, it considered a pre-sentence investigation report, the evidence at trial, the statements at sentencing, and imposed a mandatory minimum sentence of three to six years of imprisonment for homicide by vehicle while DUI, *see* 75 Pa.C.S.A. § 3735(a) (setting forth a three-year mandatory minimum sentence) (subsequently amended effective December 2018). The court also imposed a consecutive standard range sentence of one to two years of imprisonment for homicide by vehicle due to the "magnitude of [Trumbull's reckless criminal behavior [as] established by the record." *See* Trial Court Opinion, 9/21/21, at 15; *see also* N.T., 5/24/19, at 18-19 (noting that Trumbull's crimes reflected distinct "misbehaviors," namely, driving after drinking and driving in excess of the speed limit). We would find the trial court's aggregate sentence of four to eight years of imprisonment was not excessive; further, the trial court acted within its discretion when imposing consecutive sentences. Thus, Trumbull's intended issue would be frivolous.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/25/2022