J-S08023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                      :              PENNSYLVANIA
                                        :

              v.                             :
                                        :

MARITZA GONZALEZ                 :
                                        :

              Appellant           :   No. 582 MDA 2022

Appeal from the Judgment of Sentence Entered February 15, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0002590-2020

BEFORE:   OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:       **FILED SEPTEMBER 07, 2023**

     Maritza Gonzalez (Appellant) appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas following her jury convictions of retail theft and receiving stolen property.[1]  Appellant received an aggregate sentence of 3 years' probation.  On appeal, she alleges the trial court committed error when it did not merge her sentences and when it admitted purported prejudicial evidence at trial.  We agree that Appellant's convictions should have merged, but conclude her remaining claim is meritless.  Thus, we affirm in part and vacate in part.

     On February 11, 2020, Appellant and her ex-boyfriend, Joshua Green, went to "That Fish Place That Pet Place" (That Fish Place), a pet supply store

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. 3929(a)(1), 3925(a).

in Lancaster County, Pennsylvania. N.T. Jury Trial Vol. I, 2/14/22, at 51, 108. While there, they took $83.23 worth of merchandise from the store without paying. *Id.* at 68-69; *see* N.T. Sentencing, 2/15/22, at 6. That same day, Store Manager Alicia McClune, noticed discarded packaging on a shelf and checked the store's surveillance videos. N.T. Jury Trial Vol. I at 50. In the videos, McClune observed Appellant taking fish food and handing it to Green, who then placed it in his pocket and left the store without paying. *See id.* at 66, 68-69. McClune also determined other items, which Appellant admitted to having possession of, were missing from the store. *Id.* at 69, 89-90, 94. Police arrested Appellant and charged her with retail theft, conspiracy, and receiving stolen property.[2]

This matter proceeded to a two-day jury trial on February 14, 2022, where the Commonwealth presented testimony from Store Manager McClune and East Hempfield Township Police Officer John Mulligan. The trial court summarized the witnesses' testimony as follows:

> On February 11, 2020, [Store Manager] McClune discovered empty packaging on a shelf[ at That Fish Place], prompting her to return to her desk and check footage captured on security cameras placed throughout [the store]. Through [Store Manager] McClune, the Commonwealth introduced the video footage captured on the cameras. The footage tracked Appellant [and] Green . . . as they walked through That Fish Place[.]

---

[2] 18 Pa.C.S. 903(a)(1). Initially, Appellant was only charged with retail theft and conspiracy. On February 7, 2022, the Commonwealth amended the information to include the charge of receiving stolen property. *See* Criminal Docket No. CP-36-CR-0002590-2020, at 5; Information, 2/7/22.

As the jury watched the footage, [Store Manager] McClune offered testimony regarding what the jury was seeing, which included . . . Green removing tags from dog clothing and placing fish food into his pocket after Appellant took it from a shelf and handed it to him. [Store Manager] McClune also noted that merchandise was missing — and packaging and tags were recovered — from areas where Appellant and . . . Green were seen on the store's security footage.

At the conclusion of [Store Manager] McClune's testimony, the Commonwealth entered into evidence a receipt of items totaling $83.23 that [Store Manager] McClune determined were removed from the store without being paid for by . . . Green and Appellant.

Trial Ct. Op., 8/4/22, at 2 (paragraph breaks added, record citations omitted, & spelling errors corrected).

Officer Mulligan then testified

that he became involved in the above-captioned matter on February 11, 2020, when he was dispatched to That Fish Place[ ] to investigate the suspected retail theft reported by [Store Manager] McClune. Officer Mulligan testified that he reviewed the video footage provided [by Store Manager] McClune and was able to identify Appellant as one of the two individuals depicted in the footage.

Officer Mulligan stated that, throughout his career, he had investigated over one hundred retail thefts[ and] shared observations that he made, based on his training and experience, after viewing the security footage collected from That Fish Place[.] He also testified that, in the course of his investigation, he interviewed Appellant and [she] confirmed that she went to the store with . . . Green[, who] later gave her the items that [Store Manager] McClune determined were missing from inventory. Officer Mulligan testified that, based on his observations, he ultimately decided to charge Appellant in the above-captioned matter.

Trial Ct. Op. at 3 (paragraph break added & record citations omitted).

Appellant testified on her own behalf that she did not plan on stealing anything from That Fish Place and she did not witness Green take any items from the store without paying. N.T. Jury Trial Vol. II, 2/15/22, at 109-10. After leaving the store together, Appellant and Green went to her home where Green removed stolen items from his pocket and gave some of them to her. *Id.* at 113-15. Appellant stated she did not report the theft to the police as she was "scared of being charged . . . because [they] were in the store together." *Id.* at 114. On cross examination, Appellant admitted to telling Officer Mulligan that Green "has been stealing throughout Lancaster County[.]" *Id.* at 115-16.

At the conclusion of trial, the jury found Appellant guilty of retail theft and receiving stolen property, and not guilty of conspiracy. Immediately following trial, the trial court sentenced Appellant to a term of three years' probation for her retail theft conviction and a concurrent term of two years' probation for receiving stolen property.[3]

_____

[3] The trial court also noted that Appellant's term of probation "may terminate after 18 months if" she complies with her probation conditions. *See* N.T. Sentencing at 6.

Appellant filed a post-sentence motion, which the trial court denied on March 10, 2022.[4]  This timely appeal followed.[5]

Appellant raises the following for our review:

I.     Did the trial court err in sentencing [Appellant] on both Count 1 and Count 3 of the criminal information where the charges should have merged for sentencing purposes?

II.    Did the trial court err in overruling defense counsel's timely objections to admit Officer Mulligan's testimony regarding

_____

[4] A post-sentence motion filed more than 10 days after sentencing is untimely. Pa.R.Crim.P. 720(A)(1) ("[W]ritten post-sentence motion[s] shall be filed no later than 10 days after imposition of sentence.").  If a petitioner does not file a timely post-sentence motion and wishes to appeal, they must file a notice of appeal within 30 days of sentencing proceedings.  Pa.R.Crim.P. 720(A)(3) (where no post-sentence motion is submitted, the defendant must file a notice of appeal within 30 days of imposition of sentence).

The criminal docket reflects that Appellant was sentenced on February 15, 2022.  She then filed her post-sentence motion on February 25, 2022 — 10 days after sentencing — and a notice of appeal on April 8, 2022. *See* Sentencing Order 2/15/22; Appellant's Post Sentence Motion, 2/25/22; Appellant's Notice of Appeal, 4/8/22.  However, Appellant attached a sentencing order to her docketing statement indicating she was sentenced on February 14, 2022, making her February 25th post-sentence motion — and the present appeal — untimely. *See* Appellant's Docketing Statement, 5/25/22, at 4 (unpaginated).

This Court issued a Rule to Show Cause Order for Appellant to explain why her appeal should not be quashed as untimely.  Order, 6/23/22. Appellant responded that the sentencing order attached to her docketing statement included a typographical error that has since been corrected to reflect the proper February 15th sentencing date.  Appellant's Answer to Court's *Per Curiam* Order of June 23, 2022, 6/23/22, at 1.  As such, Appellant's post-sentence motion and subsequent appeal were timely filed.

[5] Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The trial court filed its Rule 1925(a) opinion on August 4, 2022.

the common practices of two conspirators committing retail theft and in allowing Officer Mulligan to testify that [Appellant] told Officer Mulligan the man who accompanied her on February 11, 2020, was known for stealing.

Appellant's Brief at 6.

Appellant first argues that her convictions for retail theft and receiving stolen property should have merged for sentencing purposes. Appellant's Brief at 16-17. The trial court and the Commonwealth both agree that it was improper to sentence Appellant at each conviction, but maintain the error was "harmless" since the sentences were ordered to run concurrently. *See* Trial Ct. Op. at 5; Commonwealth Brief at 9. Appellant is entitled to relief.

Preliminarily, we note that Appellant did not object to her sentence during proceedings or in her post-sentence motion. However,

> [a] claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary. A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction.

*Commonwealth v. Leaner*, 202 A.3d 749, 784 (Pa. Super. 2019) (internal citation & quotation marks omitted).

Section 9765 of the Pennsylvania Sentencing Code provides the following regarding merger of sentences:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher[-]graded offense.

42 Pa.C.S. § 9765.

- 6 -

A plain language interpretation of [Section] 9765 reveals the General Assembly's intent to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Commonwealth v. Calhoun*, 52 A.3d 281, 284 (Pa. Super. 2012) (internal citation omitted).

Here, Appellant was convicted of retail theft under subsection (a)(1) and receiving stolen property, which are defined as follows:

A person commits retail theft when they

take[ ] possession of, carr[y] away, transfer[ ] or cause[ ] to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof[.]

18 Pa.C.S. § 3929(a)(1). A person is guilty of receiving stolen property when:

[S]he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a).

Appellant's convictions satisfy the requirements of merger. First, the evidence presented at trial establishes she was convicted of both retail theft and receiving stolen property "aris[ing] from the same criminal act." *See* 42 Pa.C.S. § 9765; *see also* N.T. Jury Trial Vol I at 53-62 (Store Manager McClune describing the incident, which occurred on February 11, 2022, and consisted of Appellant and her ex-boyfriend taking items from the store), 83-

84 (Officer Mulligan testifying that he investigated a retail theft on February 11, 2020, and received one receipt listing the items taken from the store), 107, 113 (Appellant stating that she and Green went to That Fish Place on February 11, 2020, and after returning to her home, Green gave her the items he took from the store).

Second, the offenses of retail theft and receiving stolen property contain the same statutory elements for the purposes of merger of sentences. *See* 42 Pa.C.S. § 9765. Upon this Court's review, we have found the case law regarding merger of these two statutes, and in particular whether they share the same statutory elements, is limited.[6] This Court has recognized in prior published opinions and non-precedential unpublished memoranda that, though the issue of merger was not a claim raised on appeal, trial courts have merged the crimes of receiving stolen property and retail theft for sentencing purposes. *See Commonwealth v. Rodriguez*, 989 A.2d 29, 30 (Pa. Super. 2010) (noting in the procedural history that the trial court merged theft by deception and receiving stolen property into retail theft — charged under subsection (a)(1) — for sentencing); *Commonwealth v. Goodermuth*, 2110 MDA 2015 (unpub. memo. at 2) (Pa. Super. Aug. 1, 2016) (stating in the procedural history that the trial court merged receiving stolen property into retail theft charged under subsection (a)(1)); *Commonwealth v. Wolf*, 125

---

[6] Moreover, we note that even though the trial court and the parties all agree that retail theft and receiving stolen property merge for sentencing, they do not cite to any case law in support of this conclusion.

EDA 2016 (unpub. memo. at 2) (Pa. Super. Nov. 1, 2016) (recognizing in the procedural history that the trial court merged the appellant's convictions of receiving stolen property and retail theft charged under subsection (a)(1) for the purposes of sentencing).  For this reason, our analysis is guided by a prior unpublished memorandum of this Court, which addresses merger of these crimes — **Commonwealth v. Caliente**, 140 MDA 2020 (unpub. memo.) (Pa. Super. Feb. 4, 2022).  **See** Pa.R.A.P. 126(b)(1)-(2) (non-precedential memorandum decisions of this Court filed after May 1, 2019, may be cited for their persuasive value).

In **Caliente**, the defendant was charged with two counts each of retail theft under subsection (a)(2)[7] and receiving stolen property.  **Caliente**, 140 MDA 2020 (unpub. memo. at 2-3).  Specifically, the defendant was charged with one count of each crime with respect to an incident that occurred on February 20, 2019, and charged with the remaining counts for the same conduct, which occurred one day later.  **Id.** at 1-2.  The trial court sentenced

---

[7] Under this subsection, a defendant commits retail theft when she

> alters, transfers or removes any label, price tag marking, indicia of value or any other markings which aid in determining value affixed to any merchandise displayed, held, stored or offered for sale in a store or other retail mercantile establishment and attempts to purchase such merchandise personally or in consort with another at less than the full retail value with the intention of depriving the merchant of the full retail value of such merchandise[.]

18 Pa.C.S. § 3929(a)(2).

the defendant to: (1) two consecutive terms of 14 to 28 months' incarceration for each conviction of retail theft; (2) a consecutive term of six to 24 months' incarceration for one count of receiving stolen property; and (3) a consecutive term of 5 to 12 months' incarceration for the second count of receiving stolen property. *Id.* at 2.

On appeal, the defendant argued that her sentences for receiving stolen property should have merged with the sentences for retail theft. *Caliente*, 140 MDA 2020 at 9. This Court concluded the convictions did indeed merge and the defendant was entitled to relief. *Id.* at 14-15. In support of this conclusion, the panel first examined the crimes of theft by unlawful taking and receiving stolen property:

> [We] recently reiterated a long standing proposition "that convictions for theft by unlawful taking and receiving stolen property merge for sentencing purposes." *See Commonwealth v. Crawford*, 254 A.3d 769, 781-82 (Pa. Super. 2021)[.] Although decided before the Pennsylvania legislature adopted 42 Pa.C.S. § 9765, this Court has previously held that theft by unlawful taking and retail theft merged for sentencing where "both convictions arose out of the single act of theft of [a] diamond ring." *Commonwealth v. Boerner*, 422 A.2d 583, 517 (Pa. Super. 1980). This Court determined,
>
>> [o]nce proof of the theft by unlawful taking was complete, so was proof of the retail theft, and vice-versa. It is therefore unquestionable that the two crimes merged for sentencing purposes, and appellant could be sentenced for only one. . . .

*Id.* at 12.

The ***Caliente*** panel then noted case law addressing the elements of theft by unlawful taking and receiving stolen property in the context of double jeopardy:

We begin our analysis by comparing the first element of both statutes. Although theft by receiving stolen property does not expressly prohibit "unlawful taking or unlawful control over movable property," . . . the statute's requirement that a person intentionally acquire possession, control or title, retain, dispose or lend on the security of moveable property of another knowing or believing that it is stolen necessitates either theft of the property or unlawful control over the movable property of another.

Similarly, the second element of theft by unlawful taking, that the movable property belong to another, is necessary to establish the second element of theft by receiving stolen property because a person cannot have knowledge or belief that property was stolen unless it belonged to another. Finally, both statutes require the intent to deprive permanently.

***Caliente***, 144 MDA 2020 at 12-13 (paragraph break added) *citing* ***Commonwealth v. Young***, 35 A.3d 54, 63 (Pa. Super. 2011) (finding "when a defendant is found not guilty of receiving stolen property or not guilty of theft by unlawful taking, a second trial on the other charge would violate his protection against double jeopardy.").

The ***Caliente*** panel ultimately concluded each retail theft and corresponding receiving stolen property charge arose from a single criminal act for the respective day, and all of the elements of receiving stolen property are included in retail theft. ***Caliente***, 144 MDA 2020 at 13-15. The panel explained:

Retail theft [under subsection (a)(2)] and [receiving stolen property] both require intent to deprive the owner (of the full

value of the merchandise and possession of the item, respectively). For retail theft, a person must have the intent to "deprive the merchant of the full value of the merchandise" and "without intent to restore possession" for [receiving stolen property]. Subsumed in the "attempt to purchase the item with intent to deprive the merchant of the full value of the merchandise" is "without the intent to restore." ***See*** [***Commonwealth v. Crawford***, 254 A.3d 769, 781-82 (Pa. Super. 2021), *appeal denied*, 356/357/358 MAL 2021 (Nov. 17, 2021)] (finding the intent is identical in theft by unlawful taking and theft-RSP); [***Commonwealth v. Young***, 35 A.3d 54, 63 (Pa. Super. 2011)] (theft by unlawful taking and theft-RSP both require the intent to deprive permanently).

[Receiving stolen property] requires that a person intentionally receives, retains, or disposes of movable property of another with knowledge or belief that it was probably stolen. 18 Pa.C.S. § 3925. "As used in this section the word "**receiving**" means acquiring possession [or] control . . . of the property." 18 Pa.C.S. § 3925(b) (emphasis in original). Retail theft requires that a person alters, transfers, or removes any label, price tag and attempt to purchase the merchandise at less than retail value. 18 Pa.C.S. § 3929(a)(2). ***See*** [***Commonwealth v. Black***, 380 A.2d 911, 913 (Pa. Super. 1977)] (removal of a store price tag, in itself, is not unlawful without the criminal intent to deprive the owner of the full value of the merchandise); *c.f.* [***Rodriguez***, 989 A.2d at 32] (retail theft judgment of sentence vacated for insufficient evidence where appellant did not have possession of the item with the requisite intent when Appellant removed stereo from Walmart shelf and took it directly to returns counter to obtain money). In ***Rodriguez***, this Court found the [defendant's] criminal conduct began when he placed the item into the possession of the store clerk to request a refund and, therefore, [the defendant] did not have possession of the item with the requisite intent for retail theft. ***Id.***

Once a person attempts to purchase the altered merchandise at less than retail value, with the requisite intent, they have completed the crime of retail theft, likewise, they have acquired "possession" of the property of another and clearly have knowledge it has been stolen. ***See Rodriquez***, 989 A.2d at 32; ***Black***, 380 A.2d at 913. "Receipt" of the item, acquiring possession or control of the property is included in the elements of retail theft. ***See Rodriquez***, 989 A.2d at 32; ***Black***, 380 A.2d at 913. We conclude that retail theft includes all the elements of

- 12 -

[receiving stolen property] that the person "receive" property of another, "knowing it has probably been stolen," and has the requisite intent to permanently deprive the owner. Because the crimes of retail theft and [receiving stolen property] arose from the same criminal act and the crime of retail theft contains all the elements of [receiving stolen property], the crimes merge for sentencing. 42 Pa.C.S. § 9765.

*Id.* (footnote omitted). Thus, the panel vacated the defendant's sentences for the convictions of receiving stolen property. *Id.* at 15. We conclude *Caliente* to be instructive of our analysis of the present case.

Preliminarily, we reiterate that Appellant was convicted of retail theft under subsection (a)(1) and receiving stolen property. Though in *Caliente* the defendant was convicted of retail theft under a different subsection, we have determined the prior panel's analysis is applicable here as well. Both the subsection charged in *Caliente* and the present matter require the intent to deprive the merchant of the full value of their merchandise. *See* 18 Pa.C.S. §§ 3929(a)(1)-(2). Like *Caliente*, Appellant's conviction of receiving stolen property contains the same elements as those in retail theft under subsection (a)(1). To commit the crime of receiving stolen property, an individual must: (1) receive the property of another; (2) knowing it has been stolen; with (3) no intent to restore it to the owner. *See* 18 Pa.C.S. § 3925(a). Once these three elements have been satisfied the criminal action has been completed. Similarly, to commit retail theft under subsection (a)(1), a person must also take possession of the property of another, thus depriving the owner of the object. *See* 18 Pa.C.S. § 3929(a)(1); *see also* 18 Pa.C.S. 3925(b) (under the statute for receiving stolen property, "the word 'receiving' means acquiring

- 13 -

possession, control or title. . . ). The additional requirement in retail theft that the object is taken "without paying" implies the actor is well aware of its stolen status. *See id.* Thus, when a person commits the crime of retail theft, they have simultaneously completed the crime of receiving stolen property. Accordingly, we are guided by *Caliente* and agree with the trial court and the parties that these convictions merge for the purpose of sentencing.[8] Therefore, we vacate Appellant's sentence for receiving stolen property. Nevertheless, because Appellant's two-year probation sentence for receiving stolen property was to run concurrent to her three-year probation sentence for retail theft, the overall sentencing scheme is not disturbed, and remand to the trial court is unnecessary. *See Commonwealth v. Lomax*, 8 A.3d 1264, 1268 (Pa. Super. 2010) (stating when this Court vacates a sentence without upsetting the overall sentencing scheme, there is no need for remand).

---

[8] To support her argument, Appellant relies on 18 Pa.C.S. § 3902, which governs consolidation of theft offenses. *See* Appellant's Brief at 17. It states:

> Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

18 Pa.C.S. § 3902. The rules for merger of sentencing, however, are listed in a different statute. *See* 42 Pa.C.S. § 9765. Though we grant Appellant relief on this claim, we do not rely upon this argument — which improperly cites a rule regarding consolidation rather than merger — in our analysis.

In her second argument, Appellant claims the trial court erred when it admitted Officer Mulligan's testimony regarding: (1) the common practices of conspirators committing retail theft; and (2) Appellant's statements that Green "was known for stealing." Appellant's Brief at 17-18.

First, we address the officer's testimony regarding "common practices" of retail theft conspirators. Appellant's Brief at 19. Relevant to Appellant's argument, the following are the officer's statements as well as the exchange that took place at Appellant's trial between the trial court and the parties:

> [Commonwealth:] Officer Mulligan, in reviewing the video, based on your training and experience, what observations did you make with regard to the video?
>
> [Officer Mulligan]: [Appellant and Green] enter the store together. They split up. They go different ways. Obviously, [Green] is retrieving items separately of [Appellant].
>
> They reconvene at the front of the store. They go back through. I see [Appellant] makes a selection of an item, and then [Green] takes that item from [Appellant] and then conceals it on his person. In the video, like I said, I can see [Green] take possession of the property from [Appellant] and place it [o]n his person. He does not make the attempt to place that item back on the shelf which, to me, subjectively was intent to conceal the item, and [Appellant] was assisting with him.
>
> [Appellant's] body placement in that photo, as well, was also blocking from staff that were located behind them, and that was my observation.
>
> *       *       *
>
> [Commonwealth: I]n retail thefts involving two people, do both — in your experience, do both individuals select items?
>
> [Appellant's Counsel]: Objection, relevance. [Pa.R.E.] 403, as well[.]

[Trial court]: Relevance to the question?

[Commonwealth]: [T]he relevance would be that this is a retail theft and a conspiracy. Based on [the officer's] training and experience, I would think that he would be able to say what is common between co-conspirators.

[Appellant's Counsel]: May we approach[?]

[Trial court]: Yes.

(The following occurred at sidebar:)

[Appellant's Counsel]: [T]his isn't relevant in this case because [Appellant] has been charged with retail theft with conspiracy and receiving stolen property.

However, there has been no basis laid other than these postulations of what two people might do together. Under [Rule] 403, . . . that is highly more prejudicial than it is probative today.

[Commonwealth]: Based on his training and experience, he has investigated over a hundred retail thefts, I would think he would be able to say what common actions he has seen between . . .

[Trial Court]: I'm not sure what he can say common, maybe not unusual, but that is probably as far as you can take that.

[Commonwealth]: Okay.

[Trial Court]: He has seen the tapes. He doesn't necessarily have to do the common practice. But you could say, it is not common[.]

[Appellant's Counsel]: I understand that. . . .

[Commonwealth]: I will rephrase my question.

(The sidebar discussion concluded.)

[Commonwealth]: Officer Mulligan, is it uncommon for one codefendant to select the items?

[Officer Mulligan]: No.

N.T. Jury Trial Vol I, at 85-88.

Appellant takes issue with the trial court's decision to permit the officer to testify regarding whether "certain behavior [of retail theft conspirators] was

'uncommon'" rather than common.  ***See*** Appellant's Brief at 19-20.  Appellant

insists there is "no difference between the two questions" which elicited the

same information.  ***Id.*** at 20.  Appellant maintains that the officer's training

and experience do not permit this kind of testimony because the officer merely

stated he had experience in investigating retail thefts, but not specifically retail

theft involving conspirators.  ***Id.***  Furthermore, Appellant avers the probative

value of this testimony outweighed any prejudicial effect because the officer

was not qualified as an expert, thus, he "unfairly concluded for the jury" that

Appellant and Green were working together.[9]  ***Id.*** at 20-21.

We review a challenge to the admissibility of evidence by the following

standard:

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion.  Our standard of review of a challenge to an evidentiary ruling is therefore limited.  Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Williams***, 241 A.3d 1094, 1101 (Pa. Super. 2020)

(citation omitted). Pennsylvania Rule of Evidence 403 states a trial court may

exclude relevant evidence when its probative value is outweighed by unfair

prejudice.  Pa.R.E. 403.

---

[9] Notably, Appellant does not cite to any authority to support her argument that Officer Mulligan cannot testify as a lay witness.

The Commonwealth did not seek to qualify Officer Mulligan as an expert witness at trial, and instead offered his testimony as a lay opinion. Lay witness testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702[, governing expert testimony].

*Commonwealth v. Gause*, 164 A.3d 532, 537-38 (Pa. Super. 2017), *citing* Pa.R.E. 701. Generally,

lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder. Lay testimony has been defined as testimony "intended to describe something that jurors otherwise had not been able to experience for themselves, by drawing upon the sensory and experiential observations that the witness made firsthand."

*Commonwealth v. Harper*, 230 A.3d 1231, 1242 (Pa. Super. 2020) (citations & some quotation marks omitted).

Here, the trial court concluded the evidence was properly admitted as lay opinion testimony based on the following:

[The court] required that the Commonwealth tailor its questioning in such a way that Officer Mulligan remained within the boundaries of permissible lay opinion testimony. [It] did not allow Officer Mulligan to testify broadly about common practices utilized by individuals working together to commit retail thefts; such questioning would have waded uncomfortably close to the edge of admissible lay opinion testimony. Instead, [the court] instructed the Commonwealth to reframe its question in such a way to solicit an opinion that . . . was based only on Officer Mulligan's perception

of the surveillance footage in the instant matter and his own experience investigating retail thefts.

In doing so, [the court] carefully considered the precepts of Rule 403 and allowed the jury to hear helpful lay opinion testimony without risking unfair prejudice to Appellant. The jury had already seen the footage depicting Appellant[ and] Green's movements throughout the store and had heard Officer Mulligan's interpretation of Appellant's role in the commission of the at-issue theft. Consequently, [the court] determined that it was helpful and not unfairly prejudicial to allow very limited questioning regarding whether-based on Officer Mulligan's experience investigating retail thefts[,] what the jury had seen in the footage was uncommon. . . .

Trial Ct. Op. at 9-10.

We agree with the trial court's conclusions. Officer Mulligan observed the video surveillance and then, based on his personal experience, compared the conduct depicted in the video to other retail thefts. He spoke about his experience investigating over 100 retail thefts as support for the basis behind his opinion. Pursuant to Rule 701, the officer had a rational basis for his opinion, his comments were helpful to a jury in determining Appellant's role in the commission of the theft, and his testimony did not exceed the scope of lay opinion testimony. *See* Trial Ct. Op. at 9-10; *Williams*, 241 A.3d at 1101; *Gause*, 164 A.3d 532, 537-38. *See also Commonwealth v. Berry*, 172 A.3d 1, 4-5 (Pa. Super. 2017) (officers' opinions about whether a substance appeared to be blood droplets were admissible as lay opinion testimony where they spoke about their years of experience and relevant crime scene training, and they directly observed the victim covered in blood).

Additionally, we disagree with Appellant's contention that the officer's testimony is unfairly prejudicial because it made impermissible conclusions for

the jury. *See* Appellant's Brief at 20-21. Officer Mulligan described Appellant and Green's conduct as depicted in the video, which the jury watched during trial. *See* N.T. Jury Trial Vol. I, at 85-86. He then offered his opinion based on his training and experience — as an officer that has investigated over 100 retail thefts — that "in retail thefts involving two people . . . it is [not] uncommon for one [person] to select the items" that are stolen. *Id.* at 86, 88. This statement did not cause, as Appellant suggests, the jury to conclude that Appellant did (or did not) participate in the conduct at issue. The jury was free to believe all, part, or none of the evidence the Commonwealth presented, and afford it any weight it thought appropriate. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) ("It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses[.]"). As Appellant has not established the trial court abused its discretion in allowing this testimony, no relief is due. *See Williams*, 241 A.3d at 1101.

Next, Appellant argues the trial court erred when it admitted Officer Mulligan's testimony regarding Appellant's statements to him after the incident. Appellant's Brief at 21. By way of background, at trial, the following exchange occurred:

[Commonwealth]: Officer Mulligan, did you speak with [Appellant] in this case?

[Officer Mulligan]: I did, yes.

[Commonwealth]: And in speaking with her, what did she tell you?

[Officer Mulligan]: She confirmed that it was her that was viewed on the video surveillance that I watched inside the store with [Green].

She confirmed going through the store with [Green] and leaving the store with [him].

She also stated [Green] was known in the area, or around where they lived, for going to stores and also committing thefts.

[Appellant's Counsel]: Objection, Your Honor, [Rule] 403 at this point.

[Trial court]: He is not on trial.

[Appellant's Counsel]: Understood.

[Trial court]: Very good.  Overruled.  Go ahead.

[Commonwealth]: Officer Mulligan, did she make any statements to you about the items?

[Officer Mulligan]: Yes.  She received the items from the male.

[Commonwealth]: So [Appellant] told you that [Green] gave them to her?

[Officer Mulligan]: Yes.

N.T. Jury Trial Vol I, at 89-90.

Appellant contends: (1) the evidence was not relevant; (2) the testimony's "probative value was clearly outweighed by the unfair prejudice" pursuant to Rule 403; and (3) it violated Pennsylvania Rules of Evidence 404(b)(1) and (3).  Appellant's Brief at 21-22.  Regarding relevance, Appellant contends that "[w]hat another individual was known for in the community" did not impact whether she committed a retail theft.  *Id.* at 22.  Specific to Rules 404(b)(1) and (3), she contends the Commonwealth failed to provide notice of this testimony and used it to "prove [Green's] character to show that he

- 21 -

had in fact acted in accordance with that character on February 11, 2020[,] with [Appellant]." ***Id.***

Pennsylvania Rule of Evidence 401 provides that evidence is relevant when it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in the determining action." Pa.R.E. 401. As mentioned above, Rule 403 states a trial court may exclude relevant evidence when its probative value is outweighed by unfair prejudice. Pa.R.E. 403.

Rule 404 provides, in relevant part:

(1) Prohibited uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

\* \* \*

(3) Notice in a Criminal Case. In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1), (3).

Preliminarily, we note that Appellant's claim that the testimony violated Rule 404(b)(1) and (3) is waived. Appellant did not object to the officer's testimony on this basis at trial[10] or include this claim in her post-sentence

---

[10] Appellant only objected to this testimony based on Rule 403. ***See*** N.T. Jury Trial Vol. I at 89.

motion.[11]   **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Regarding the remainder of Appellant's claim as to relevancy and Rule 403, the trial court concluded the following:

> It was not unfairly prejudicial to allow [A]ppellant's own statement about . . . Green — who was not on trial — to be admitted. Accordingly, because Officer Mulligan's testimony was highly relevant and helpful to the [j]ury in contextualizing what was depicted in the surveillance footage captured at That Fish Place[, the court] did not err in determining that its relevance was not outweighed by any of the risk factors cautioned in Rule 403.

Trial Ct. Op. at 11.

We agree with the trial court that the officer's testimony was relevant and not unduly prejudicial.  Appellant admitted to Officer Mulligan that she entered and exited the store on that day with Green and that he was known for committing thefts in the area.  **See** N.T. Jury Trial Vol. I at 89.  Because Appellant was charged with conspiracy and receiving stolen property, this evidence was relevant for establishing whether she knew the items Green gave her were stolen.

Further, Appellant has waived any claim that this testimony prejudiced her at trial.  After Officer Mulligan's testimony, Appellant testified on her own behalf.  The Commonwealth asked her whether she made this comment to the officer, to which she replied "Yes, I did."  N.T. Jury Trial Vol II, at 115-16.

---

[11] In her post-sentence motion, Appellant only requested the trial court modify her sentence.  **See** Appellant's Post-Sentence Motion, 2/25/22, at 2-3 (unpaginated).

Appellant did not object to this line of questioning, thus admitting the same evidence for the jury's consideration. Accordingly, because Appellant herself provided the same testimony as the officer and did not object to its admissibility, this claim is waived on appeal. ***Commonwealth v. (William) Smith***, 213 A.3d 307, 309 (2019) (stating "[t]he absence of a contemporaneous objection [at the trial court level] constitutes a waiver of the claim on appeal" (citation omitted)). Again, Appellant has failed to demonstrate the trial court abused its discretion and as such, no relief is due. ***See Williams***, 241 A.3d at 1101.

In sum, Appellant's sentences for retail theft and receiving stolen property merge but this does not impact the sentencing scheme, and we need not remand for resentencing. Appellant failed to demonstrate the trial court abused its discretion regarding her evidentiary claims. As such, no further relief is due.

Judgment of sentence vacated in part. Affirmed in all other respects. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/07/2023

- 24 -